IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

COMMUNICATIONS CENTER, INC.,

Plaintiff, No. CIV S-03-1968 WBS KJM

v.

MATTHEW J. HEWITT, et al.,

ORDER AND

Defendants.

FINDINGS AND RECOMMENDATIONS

_____________________________/

Plaintiff's motion for sanctions is pending before the court. The undersigned held an evidentiary hearing on February 22, 2005, to address both parties' objections to the evidence submitted in support of and opposition to the motion for sanctions. Plaintiff's expert, Mark Menz, and defendant Matthew Hewitt testified at the hearing. Hewitt incorporated and operates Pacific Crest Research Corporation, which is named as a co-defendant. Michael Daponde and Benjamin Webster appeared as counsel for plaintiff. Robin Perkins and Christopher Wohl appeared as counsel for defendants. Upon review of the documents in support and opposition, upon hearing the arguments of counsel and the testimony of the witnesses, and good cause appearing, THE COURT FINDS AS FOLLOWS:[1]

[1] In making these findings, the court has relied on the evidence admitted at the hearing and the evidentiary material previously submitted in support of and opposition to the motion for

Plaintiff moves for terminating sanctions against defendants for violation of this court's discovery order. The court has authority to impose sanctions for abuses of the discovery process under Rule 37 of the Federal Rules of Civil Procedure. Wanderer v. Johnston, 910 F.2d 652 (9th Cir.1990). The drastic sanction of default may be imposed only when the sanctioned party's noncompliance was due to willfulness, fault, or bad faith. Henry v. Gill Indus., 983 F.2d 943, 946 (9th Cir.1993). Five factors must be weighed in determining whether the sanction of default for noncompliance with discovery is appropriate: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the [opposing party]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." Malone v. U.S. Postal Serv., 833 F.2d 128, 130 (9th Cir. 1987). When a party violates a court order, the first and second factors will favor sanctions and the fourth factor will weigh against sanctions. Determination of plaintiff's motion for terminating sanctions thus turns on the third and fifth factors identified in Malone. See Computer Task Group, Inc. v. Brotby, 364 F.3d 1112, 1115 (9th Cir. 2004).

On December 12, 2003, plaintiff propounded its first set of requests for production of documents. By order filed May 20, 2004, defendants were ordered to within ten days "provide, for copying and inspection, a compact disc containing mirror images of any hard drives of the computers in defendants' possession that contain documents responsive to plaintiff's request for production of documents." May 20, 2004 Order at 1:20-23. The order further provided that production would initially be identified for "Attorney's Eyes Only" and subject to the protective order previously entered in this action. Id. at 1:23-24. The order specifically noted that defense counsel represented that no documents would be withheld from production. Id. at 2:2-3.

/////

---

sanctions to which objection was not made. As to defendants' objections to certain portions of the Menz declaration cited herein, those objections are overruled.

Plaintiff's expert testified that a mirror image, as required by the court's order, is a forensic duplicate, which replicates bit for bit, sector for sector, all allocated and unallocated space, including slack space, on a computer hard drive. In response to the court's order, on May 28, 2004, defendants produced three CDs of what are referred to by the litigants as Hard Drives 1, 2, and 3, to plaintiff. These CDs were not mirror images of defendants' hard drives. On July 6, 2004, defendants produced ten discs to plaintiff. Plaintiff's expert was not able to read all of these discs; those he could read, again, were not mirror images. On or about July 13 through July 16, 2004, defendant Hewitt installed a program called Evidence Eliminator on Hard Drives 1, 2, and 3. Hewitt ran Evidence Eliminator several times during this time period to delete certain information on these drives. On July 21, 2004, defendants produced readable mirror images of Hard Drives 1 and 2, and then on August 24, 2004, a readable mirror image of Hard Drive 3. Prior to production of Hard Drive 4[2] on October 15, 2004, a new operating system was re-installed on July 20, 2004. As a result, Hard Drive 4 contained only standard system files and no deleted files.

Defendant testified he purchased Evidence Eliminator only after learning the true meaning of the "mirror image" of his hard drives required by the court's May 20, 2004 order. He said he then ran Evidence Eliminator because he wanted to destroy evidence of an on-line affair he had with a person, not his wife, and to prevent disclosure of embarrassing internet sites he had visited. Pornographic images, however, remained on the mirror images ultimately produced to plaintiff. Moreover, the log created when Evidence Eliminator was run on Hard Drive 2 in safe mode demonstrates files other than just internet histories were destroyed; these destroyed files appear to be directly relevant to the issues in this case. <u>See</u> Decl. of Mark Menz in Supp. Request for Sanctions (filed Oct. 27, 2004) ¶ 13 at 5:6-11 (file names on Evidence Eliminator log included "DBR bids," "July calendar," "Monthly Schedule"). Defendant also testified he

---

[2] Hard Drive 4 was used by defendant Hewitt as his primary computer during 2003.

understood production of the mirror images was subject to the protective order previously entered in this action, which would have prevented the kind of disclosure defendant asserted he feared. He further testified that once he learned the true meaning of a "mirror image," he understood that some information on his hard drives was "unseen." Defendant admitted he reinstalled the new operating system on Hard Drive 4 prior to producing that drive for inspection, while understanding that reformatting a hard drive in order to install an operating system would destroy all data previously stored on the drive, including data not readily apparent to the user.

Based on the inherent contradictions in his testimony, the undersigned finds defendant Hewitt is not credible. The court further finds Hewitt's conduct in using Evidence Eliminator on Hard Drives 1, 2, and 3, and reinstalling the operating system on Hard Drive 4, while under a court order to produce mirror images of these drives, was willful and in bad faith, and intended to destroy discoverable evidence. Defendant's conduct in responding to this court's discovery order thus represents a stark affront to the judicial process.

As plaintiff's expert testified, the data destroyed is "gone forever" and it is impossible to create mirror images of defendants' hard drives as they existed on May 20, 2004. Even defendant Hewitt has testified he cannot with certainty state which files he destroyed. At this point, plaintiff can never recover the documents this court found were discoverable. Regarding the third Malone factor, prejudice to the opposing party, the prejudice to plaintiff in the prosecution of this action cannot be overcome in light of defendant's flagrant disregard of this court's order.

Plaintiff alleges ten causes of action: misappropriation of trade secrets, tortious interference with prospective economic advantage, unfair competition, conspiracy, illegal interception of communications, breach of confidentiality agreement, breach of employment agreement, fraud, breach of fiduciary duty, and breach of confidence. Plaintiff concedes in its letter brief filed December 3, 2004, that any evidence spoliated by defendant would unlikely be relevant to the seventh (breach of employment agreement) and eighth (fraud) causes of action.

With respect to the remaining causes of action, the court will presume that the evidence that is now "gone foreover" demonstrated the merit of plaintiff's other claims. Cf. Hammond Packing Co. v. Arkansas, 212 U.S. 322, 349-54 (1909) (noting "presumption that the refusal to produce evidence material to the administration of due process was but an admission of the want of merit in the asserted defense"); see Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 355 (9th Cir. 1995); Computer Associates International, Inc. v. American Fundware, Inc., 133 F.R.D. 166, 170 (D. Colo. 1990).

Regarding the fifth Malone factor, availability of less drastic sanctions, no sanction short of default is available to return the parties to the position in which they would have been but for the deliberate destruction by defendant Hewitt of evidence potentially favorable to the plaintiff. Defendant Hewitt's conduct has precluded this action being decided on the merits; the jury can no longer weigh conflicting evidence because Hewitt has ensured whatever evidence on certain of defendants' computers that may have been favorable to plaintiff will never see the light of day. Monetary sanctions cannot substitute for plaintiff's presentation of its case to the jury. Evidentiary sanctions such as shifting the burden of proof also are insufficient because Hewitt arrogated to himself the right to decide what evidence would be made available for trial. Defendants' pointing to plaintiff's failure to prove that any material information was destroyed misses the point; Hewitt's claim that he deleted only files "irrelevant" to the litigation is particularly inexcusable. Hewitt is untrained in the law and is not privy to the various ways in which plaintiff could prove its case or the particular trial strategy of plaintiff's counsel. To the extent defendant argues he has produced a substantial number of documents, including some evidence favorable to plaintiff, there is no assurance that such evidence is as persuasive for plaintiff's side as that which was destroyed. Accordingly, the court will recommend entry of default on all causes of action except for the seventh and eighth causes of action.

/////

Although plaintiff requests entry of default judgment, the issue of damages has not been briefed and evidence has not been submitted in this regard. The court therefore will recommend that defendants' answer be stricken and default entered as to the causes of actions identified above. See Fed. R. Civ. P. 37(b)(2)(C) (including striking of pleadings among enumerated orders available to sanction noncompliance with a court order to the extent just); Hammond Packing, 212 U.S. at 349-54 (striking of answer and entering default did not violate due process in response to refusal to produce material evidence). Plaintiff then may move for default judgment and adduce proof of damages. See Fed. R. Civ. P. 55(b)(2); Local Rule 72-302(c)(19).

Plaintiff requests attorneys' fees and expert costs incurred in connection with the motion for sanctions. The court has reviewed in camera the billing records pertinent to the sanctions motion. The court finds the billing records are sufficiently detailed and the amount billed reasonable so as to support plaintiff's request for fees and costs in the amount of $145,811.75.

Accordingly, IT IS HEREBY ORDERED that reasonable expenses and costs incurred in connection with the motion for sanctions are awarded to plaintiff against defendants in the amount of $145,811.75; and

IT IS HEREBY RECOMMENDED that defendants' answer be stricken and default be entered against defendants on all causes of action except for the seventh cause of action for breach of employment agreement and the eighth cause of action for fraud.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such document should be captioned

/////

/////

"Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within five days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 5, 2005.

UNITED STATES MAGISTRATE JUDGE

006
cci-hewitt.san