1  Robin K. Perkins, SBN 131252
   Christopher F. Wohl, SBN 170280
2  **WOHL SAMMIS & PERKINS LLP**
   1006 4th Street, Fourth Floor
3  Sacramento, California 95814
   Telephone: (916) 446-2000
4  Facsimile: (916) 447-6400

5  Attorneys for Defendants,
6  MATTHEW J. HEWITT and
   PACIFIC CREST RESEARCH CORPORATION
7



8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10
    COMMUNICATIONS CENTER, INC.            **CASE NO. CIV-S-03-1968 WBS KJM**
11
12          Plaintiff,
    v.
13
    MATTHEW J. HEWITT, and PACIFIC
14  CREST RESEARCH CORPORATION

15          Defendants.
16

17      **SEPARATE STATEMENT OF OBJECTIONS TO MAGISTRATE JUDGE**

18          **MUELLER'S FINDINGS AND RECOMMENDATIONS**

19

20          **UNDER SEAL—DO NOT OPEN**

21          **WITHOUT COURT ORDER**

22

23

24

25

26

27

28

WOHL
SAMMIS
PERKINS LLP
ORNEYS AT LAW
4th St. Fourth Floor
mento, CA 95814
e (916) 446-2000
(916) 447-6400

                              - 1 -
SEPARATE    STATEMENT    OF    OBJECTIONS    TO    MAGISTRATE    MUELLER'S
RECOMMENDATIONS AND FINDINGS

1

| 1. OBJECTION ONE: | Evidentiary Support for Objection |
|---|---|
| "Plaintiff's expert testified that a mirror image, as required by the court's order, is a forensic duplicate, which replicates bit for bit, sector for sector, all allocated and unallocated space, including slack space, on a computer hard drive." (Magistrate Mueller Order p. 3:1-3) | Magistrate Mueller's order did not distinguish between a duplicate copy/mirror and what CCI later argues is a "forensic mirror". Rather, Magistrate Mueller's May 20, 2004, order requires defendants to within ten days "provide, for copying and inspection, a compact disc containing mirror images of any hard drives of the computers in defendants' possession that contain documents responsive to plaintiff's request for production of documents." On May 28, 2004, Hewitt caused to be hand-served on CCI compact discs containing what he reasonably believed were exact duplicates or "mirrors" of computer hard drives. (Reporter's Transcript of Evidentiary Hearing [hereinafter "RT"], pp. 90-92.) Hewitt did *not* know at the time Magistrate Mueller issued her order (nor did any of the lawyers involved in this case) that there was a distinction between a "duplicate copy/mirror" image and what is called a "forensically captured mirror" image. (*Ibid.*) |
| 2. OBJECTION TWO: | Evidentiary Support for Objection |
| "In response to the court's order, on May 28, 2004, defendants produced three CDs of what are referred to by the litigants as Hard Drives 1, 2, and 3, to | Hewitt read Magistrate Mueller's and reasonably believed he was required to provide CCI with a "duplicate copy" of computer hard drives. (RT pp. 90-92.) He did *not* know at the time |

WOHL
AMMIS
PERKINS LLP
JRNEYS AT LAW
4th St. Fourth Floor
mento, CA 95814
: (916) 446-2000
(916) 447-6400

- 2 -
SEPARATE STATEMENT OF OBJECTIONS TO MAGISTRATE MUELLER'S
RECOMMENDATIONS AND FINDINGS

| | |
|---|---|
| 1 plaintiff. These CDs were not mirror | Magistrate Mueller issued her order (nor did any |
| 2 images of defendants' hard drives." | of the lawyers involved in this case) that there |
| 3 (Magistrate Mueller Order p. 3:3-5) | was a distinction between a "duplicate |
| 4 | copy/mirror" image and what is called a |
| 5 | "forensically captured mirror" image. The latter |
| 6 | is distinguished from the former because a |
| 7 | forensic mirror recaptures documents, emails, |
| 8 | etc. that have been previously deleted. Hewitt is |
| 9 | not a computer expert. To quantify Hewitt's |
| 10 | level of expertise with computers he is a self- |
| 11 | described "one" or "negative one" on a scale of |
| 12 | one to ten. (RT p. 91.) |

| | |
|---|---|
| 13 **3.    OBJECTION THREE:** | **Evidentiary Support for Objection** |
| 14 "On July 6, 2004, defendants produced | Hewitt read Magistrate Mueller's Order and |
| 15 ten discs to plaintiff. Plaintiff's expert | reasonably believed he was required to provide |
| 16 was not able to read all of these discs; | CCI with a "duplicate copy" of computer hard |
| 17 those he could read, again, were not | drives.    (Reporter's Transcript of Evidentiary |
| 18 mirror images." (Magistrate Mueller | Hearing, ("RT", Exhibit 4 to Wohl Declaration) |
| 19 Order p. 3:5-7.) | pp. 90-92.)    He did *not* know at the time |
| 20 | Magistrate Mueller issued her order (nor did any |
| 21 | of the lawyers involved in this case) that there |
| 22 | was a distinction between a "duplicate |
| 23 | copy/mirror" image and what is called a |
| 24 | "forensically captured mirror" image. (RT pp. |
| 25 | 58-59, 61, 90-92, Exhibit 4) The latter is |
| 26 | distinguished from the former because a forensic |
| 27 | mirror recaptures documents, emails, etc. that |
| 28 | have been previously deleted. To quantify |

WOHL
:AMMIS
³ERKINS LLP
:RNEYS AT LAW
4ᵗʰ St. Fourth Floor
mento, CA 95814
t (916) 446-2000
(916) 447-6400

- 3 -
SEPARATE    STATEMENT    OF    OBJECTIONS    TO    MAGISTRATE    MUELLER'S
RECOMMENDATIONS AND FINDINGS

Hewitt's level of expertise with computers he is a self-described "one" or "negative one" on a scale of one to ten. (RT p. 91.)

## 4.    OBJECTION FOUR:

"On or about July 13 through July 16, 2004, defendant Hewitt installed a program called Evidence Eliminator on Hard Drives 1, 2, and 3. Hewitt ran Evidence Eliminator several times during this time period to delete certain information on these drives." (Magistrate Mueller Order p. 3:7-10.)

## Evidentiary Support for Objection

Hewitt for the first time discovered that a "forensically captured mirror" would reveal emails and Internet histories that were erased days, months and even years *before* CCI filed its lawsuit in September 2003. Hewitt testified that he "freaked out a little bit" at the prospect of having his personal and private emails and Internet histories uncovered and made public. (RT p. 98) Hewitt was afraid that CCI would be able to recreate the emails he previously deleted (most of which were deleted into the "recycle bin" before this lawsuit commenced) evidencing an "on-line" relationship with another woman. (*Id.* at pp. 98-100) Hewitt also wanted to keep private the Internet sites that he had visited over the last several years and, like the personal and private emails, were also discarded into the "recycle bin" before this lawsuit started. (*Id.* at p. 101)

To keep this private, personal and irrelevant information from CCI, to prevent its disclosure to the public and perhaps Hewitt's wife, Hewitt used a software application designed to overwrite previously deleted emails and Internet histories

WOHL
ŞAMMIS
ŢERKINS LLP
)RNEYS AT LAW
4ᵗʰ St. Fourth Floor
mento, CA 95814
≈ (916) 446-2000
(916) 447-6400

- 4 -
SEPARATE    STATEMENT    OF    OBJECTIONS    TO    MAGISTRATE    MUELLER'S
RECOMMENDATIONS AND FINDINGS

| | |
|---|---|
| 1 | from computer hard drives. (*Id.* pp. 100-101) |
| 2 | **5.  OBJECTION FIVE:** | **Evidentiary Support for Objection** |
| 3 | "Prior to production of Hard Drive 4 on | A "new operating system" was not reinstalled to |
| 4 | October 15, 2004, a new operating | defeat discovery efforts or to violate Magistrate |
| 5 | system was reinstalled on July 20, | Mueller's Order. (RT p. 104-106, 121) |
| 6 | 2004. As a result, Hard Drive 4 | In early June 2004 what has been called hard |
| 7 | contained only standard system files | drive number four "crashed" and was not |
| 8 | and no deleted files." (Magistrate | operational. (RT p. 104) |
| 9 | Mueller Order p. 3:12-14) | On June 7, 2004 Hewitt started communicating |
| 10 | | by telephone and through email with customer |
| 11 | | service technicians at Dell Computers to try and |
| 12 | | resolve the operational problems with hard drive |
| 13 | | number four.  (RT p. 105.)  To try to fix the |
| 14 | | problem Hewitt purchased a new "motherboard", |
| 15 | | a new DVD-ROM drive, added memory, and also |
| 16 | | installed a new hard drive. These attempts to fix |
| 17 | | hard drive four were not successful. (*Id* at p. 106). |
| 18 | | However, all of the information on hard drive |
| 19 | | four was transferred to hard drive number two |
| 20 | | *before* hard drive number four was reformatted by |
| 21 | | Hewitt. (*Id.* at p. 111) |
| 22 | | |
| 23 | **6.  OBJECTION SIX:** | **Evidentiary Support for Objection** |
| 24 | "He said he then ran Evidence | To keep this private, personal and irrelevant |
| 25 | Eliminator because he wanted to | information out of CCI's hands, to prevent its |
| 26 | destroy evidence of an on-line affair he | disclosure to the public and perhaps Hewitt's |
| 27 | had with a person, not his wife, and to | wife, Hewitt used a software application designed |
| 28 | prevent disclosure of embarrassing | to overwrite previously deleted information from |

WOHL
SAMMIS
PERKINS LLP
ORNEYS AT LAW
4th St. Fourth Floor
mento, CA 95814
e (916) 446-2000
(916) 447-6400

- 5 -

SEPARATE  STATEMENT  OF  OBJECTIONS  TO  MAGISTRATE  MUELLER'S
RECOMMENDATIONS AND FINDINGS

| | |
|---|---|
| 1 internet sites he had visited. | computer hard drives. Hewitt would not by |
| 2 Pornographic images, however, | anyone's definition be considered a computer |
| 3 remained on the mirror images | "expert." (RT p. 91.) This is perhaps best |
| 4 ultimately produced to plaintiff." | evidenced by the fact that although Hewitt tried |
| 5 (Magistrate Mueller Order p. 3:16-20) | he failed to remove *all* personal and embarrassing |
| 6 | material from the computer hard drives; a trail of |
| 7 | embarrassing Internet sites and pictures remained |
| 8 | behind. (*Id.* pp. 100-101) However, these sites |
| 9 | and pictures were discarded by Hewitt into the |
| 10 | "recycle bin" confirming his intent to prevent |
| 11 | disclosure. (*Id.* pp 28, 65-66, 101) |

| | |
|---|---|
| 13 **7.   OBJECTION SEVEN:** | **Evidentiary Support for Objection** |
| 14 "Moreover, the log created when | Contrary to the representation of CCI, **Hewitt has** |
| 15 Evidence Eliminator was run on Hard | **not destroyed or withheld one single document** |
| 16 Drive 2 in safe mode demonstrates files | **on computer hard drive numbers one, two or** |
| 17 other than just internet histories were | **three that in any way relate to any of CCI'S** |
| 18 destroyed; these destroyed files appear | **claims**—this is not disputed. (RT pp. 54, 92, 93, |
| 19 to be directly relevant to the issues in | 102, 114, 121) |
| 20 this case. See Decl. of Mark Menz in | This verifiable evidence includes the "EE Log", |
| 21 Supp. Request for Sanctions (filed Oct. | which shows that only "links" to some potentially |
| 22 27, 2004) ¶ 13 at 5:6-11 (file names on | relevant documents were destroyed but not the |
| 23 Evidence Eliminator log included | actual documents themselves. (Exhibit B attached |
| 24 "DBR bids," "July calendar," "Monthly | to Declaration of Greg Caouettte, attached to |
| 25 Schedule")." (Magistrate Mueller Order | Defendants' Objections as Exhibit 2.) This |
| 26 p. 3:20-24.) | objectively verifiable evidence also includes the |
| 27 | actual mirrored hard drives produced to CCI. The |
| 28 | hard drives contain all documents in Hewitt's |

- 6 -

WOHL
iAMMIS
³ERKINS ᴸᴸᴾ
ᴼRNEYS AT LAW
4ᵗʰ St. Fourth Floor
mento, CA 95814
ᵗ (916) 446-2000
(916) 447-6400

SEPARATE   STATEMENT   OF   OBJECTIONS   TO   MAGISTRATE   MUELLER'S
RECOMMENDATIONS AND FINDINGS

1    possession relevant to CCI's claims.
2    Significantly, these hard drives also contain the
3    very documents which CCI represents in its
4    Motion were destroyed by Hewitt. (Exhibits C
5    and D attached to Declaration of Greg Caouettte,
6    Exhibit 2) KIL1130" is a folder on Drive 3 where
7    the files "KC24177 Dispo 07-11-04.doc";
8    "KC24177 Marginal 07-11-04.doc"; "KC24177
9    Dispo 07-12-04.doc"; and "KC24177 Marginal
10   07-12-04.doc" may be located. (Exhibit D to
11   Declaration of Greg Caouette, Exhibit 2; Ex. A to
12   Hewitt Declaration, Exhibit 3) The "monthly
13   schedule" folder on Drive 3 is where the file "07-
14   04.xls" may be located.   The "jobs" folder,
15   "PP14" folder, "PP15" folder and "SOC" folder
16   are also located on Drive 3. (Exhibit C to
17   Declaration of Greg Caouette, Ex. 2; Declaration
18   of Matt Hewitt, Ex. 3) These folders and files
19   were never destroyed. (Exhibits B and C attached
20   to Declaration of Greg Caouette, Ex. 2;
21   Declaration of Matt Hewitt, Ex. 3; see CCI'S
22   Motion, p. 11:9-13, fn 8, 9, 10; 22:18-23:7)
23   The specific folders and files which CCI claims
24   were deleted are still contained on drive numbers
25   two and three, Hewitt's laptop and network
26   server.      (Declaration of Greg Caouette;
27   Declaration of Matt Hewitt, Ex.'s 2 and 3.) These
28   documents have never been destroyed and CCI

WOHL
iAMMIS
ᴾERKINS ᴸᴸᴾ
JRNEYS AT LAW
4ᵗʰ St. Fourth Floor
mento, CA 95814
ᵗ (916) 446-2000
(916) 447-6400

- 7 -
SEPARATE   STATEMENT   OF   OBJECTIONS   TO   MAGISTRATE   MUELLER'S
RECOMMENDATIONS AND FINDINGS

| | |
|---|---|
| | knows, or should know, that fact. *(Ibid.)* Pursuant to this Court's May 20th Order those folders and files were in fact produced to CCI via Drive 3. *(Ibid.)* As the EE Log shows, the only item destroyed by Hewitt's privacy software was the *"link"* to these documents from the time in which Hewitt accessed the network server from his laptop. *(Ibid.)* |
| **8.  OBJECTION EIGHT:** | **Evidentiary Support for Objection** |
| "Defendant also testified he understood production of the mirror images was subject to the protective order previously entered in this action, which would have prevented the kind of disclosure defendant asserted he feared." (Magistrate Mueller Order p. 3:24, 4:1-3.) | The protective order notwithstanding, Hewitt was deeply concerned about making available to CCI his private and embarrassing Internet histories and emails. (RT 98-101) Hewitt knew that on prior occasions CCI's in-house computer technician Steve Lawson examined the computer hard drives of their former employees for personal and private information. (RT p. 110) On at least one occasion a former CCI employee had her personal and private information (including adult/pornographic Internet sites that she visited and private emails) circulated between CCI management and even CCI President Bob Schleifer. *(Ibid.)* Hewitt knew about this and did not want Schleifer or others at CCI to know about the Internet sites he visited or the emails he exchanged because in the small community of "data collectors" this information |

WOHL
;AMMIS
ᴾERKINS ʟʟᴘ
)ᴿNEYS AT LAW
4ᵗʰ St. Fourth Floor
mento, CA 95814
ᵣ (916) 446-2000
(916) 447-6400

- 8 -

SEPARATE    STATEMENT    OF    OBJECTIONS    TO    MAGISTRATE    MUELLER'S
RECOMMENDATIONS AND FINDINGS

| | |
|---|---|
| 1 | | could eventually leak to Hewitt's wife. (RT 101) |
| 2 | **9.   OBJECTION NINE:** | **Evidentiary Support for Objection** |
| 3 | "He further testified that once he | Hewitt was concerned private and embarrassing |
| 4 | learned the true meaning of a "mirror | emails that had been discarded (i.e., and were |
| 5 | image," he understood that some | now "unseen") *before* this lawsuit was |
| 6 | information on his hard drives was | commenced in September 2003. (RT 98-101) |
| 7 | "unseen"." (Magistrate Mueller Order | Hewitt knew that on prior occasions CCI's in- |
| 8 | p. 4:3-4.) | house computer technician Steve Lawson |
| 9 | | examined the computer hard drives of their |
| 10 | | former employees for personal and private |
| 11 | | information. (RT p. 110) |
| 12 | | On at least one occasion a former CCI employee |
| 13 | | had her personal and private information |
| 14 | | (including adult/pornographic Internet sites that |
| 15 | | she visited and private emails) circulated |
| 16 | | between CCI management and even CCI |
| 17 | | President Bob Schleifer. (*Ibid.*) Hewitt knew |
| 18 | | about this and did not want Schleifer or others at |
| 19 | | CCI to know about the Internet sites he visited or |
| 20 | | the emails he exchanged because in the small |
| 21 | | community of "data collectors" this information |
| 22 | | could eventually leak to Hewitt's wife. (RT 101) |
| 23 | **10.   OBJECTION TEN:** | **Evidentiary Support for Objection** |
| 24 | "Defendant admitted he reinstalled the | Hewitt experienced problems with Hard Drive 4 |
| 25 | new operating system on Hard Drive 4 | since late May 2004—it had crashed and been |
| 26 | prior to producing that drive for | reformatted "10-15 times between late May and |
| 27 | inspection, while understanding that | the last time [Hewitt] tried to fix [Hard Drive 4] |
| 28 | reformatting a hard drive in order to | in July." (RT p. 121) |

WOHL
iAMMIS
'ERKINS LLP
JRNEYS AT LAW
4ᵗʰ St. Fourth Floor
mento, CA 95814
e (916) 446-2000
(916) 447-6400

- 9 -
SEPARATE   STATEMENT   OF   OBJECTIONS   TO   MAGISTRATE   MUELLER'S
RECOMMENDATIONS AND FINDINGS

| | |
|---|---|
| 1 install an operating system would<br>2 destroy all data previously stored on the<br>3 drive, including data not readily<br>4 apparent to the user." (Magistrate<br>5 Mueller Order p. 4:3-7.) | To fix the problems with Hard Drive 4 beginning<br>in early June 7, 2004 Hewitt started<br>communicating by telephone and through email<br>with customer service technicians at Dell<br>Computers. (*Id.* at p. 105.) Hewitt thereafter<br>purchased a new "motherboard", a new DVD-<br>ROM drive, added memory, and also installed a<br>new hard drive. These attempts to fix hard drive<br>four were not successful. (*Id* at p. 106). However,<br>all of the information on hard drive four was<br>transferred to hard drive number two *before* hard<br>drive number four was reformatted by Hewitt.<br>(*Id.* at p. 111) |

**11. OBJECTION ELEVEN:**

"Based on the inherent contradictions in his testimony, the undersigned finds defendant Hewitt is not credible." (Mueller Order, p. 4:8-9)

_____

*The "inherent contradictions" noted by Magistrate Mueller, supra, apparently refers to:*

*(1) Hewitt's explanation that he used Evidence Eliminator to overwrite embarrassing Internet histories and related pornographic images (Mueller Order, p.3:17-20);*

**Evidentiary Support for Objection**

Hewitt's actions and his testimony are not contradictory at all. Hewitt objects/responds to each of the four "inherent contradictions" cited by Magistrate Mueller as follows:

*(1) Hewitt's explanation that he used Evidence Eliminator to overwrite embarrassing Internet histories and related pornographic images (Mueller Order, p.3:17-20);*

**Hewitt Response**

To keep this private, personal and irrelevant information out of CCI's hands, to prevent its disclosure to the public and perhaps Hewitt's wife, Hewitt used a software application

WOHL
AMMIS
PERKINS LLP
ORNEYS AT LAW
4th St. Fourth Floor
mento, CA 95814
t (916) 446-2000
(916) 447-6400

- 10 -
SEPARATE   STATEMENT   OF   OBJECTIONS   TO   MAGISTRATE   MUELLER'S
RECOMMENDATIONS AND FINDINGS

1  *(2) the log for Hard Drive 2 indicates*
2  *that "files other than just Internet*
3  *histories were destroyed; these*
4  *destroyed files appear to be directly*
5  *relevant to the issues in this case"*
6  *(Mueller Order, p. 3:20-23);*

7  *(3) Hewitt knew that "production of the*
8  *mirror images was subject to the*
9  *protective order" which would have*
10 *prevented disclosure of embarrassing*
11 *information (Mueller Order, p. 3:26,*
12 *4:1-3); and*

13 *(4) Hewitt "reinstalled the new*
14 *operating system on Hard Drive 4 ...*
15 *while understanding that reformatting*
16 *a hard drive....would destroy all data*
17 *previously stored on the drive."*
18 *(Mueller Order 4:4-7)*

19
20
21
22
23
24
25
26
27
28

designed to overwrite previously deleted information from computer hard drives. Hewitt would not by anyone's definition be considered a computer "expert." (RT p. 91.) This is perhaps best evidenced by the fact that although Hewitt tried he failed to remove *all* personal and embarrassing material from the computer hard drives; a trail of embarrassing Internet sites and pictures remained behind. (*Id.* pp. 100-101) However, these sites and pictures were discarded by Hewitt into the "recycle bin" confirming his intent to prevent disclosure. (*Id.* p. 101)

---

*(2) the log for Hard Drive 2 indicates that "files other than just Internet histories were destroyed; these destroyed files appear to be directly relevant to the issues in this case" (Mueller Order, p. 3:20-23);*

**Hewitt Response**

Contrary to the representation of CCI, **Hewitt has not destroyed or withheld one single document on computer hard drive numbers one, two or three that in any way relate to any of CCI'S claims**—this is not disputed. (RT pp. 54, 92, 93, 102, 114, 121)

This verifiable evidence includes the "EE Log", which shows that only "links" to some

WOHL
AMMIS
PERKINS LLP
)RNEYS AT LAW
4ᵗʰ St. Fourth Floor
mento, CA 95814
e (916) 446-2000
(916) 447-6400
- 11 -

SEPARATE   STATEMENT   OF   OBJECTIONS   TO   MAGISTRATE   MUELLER'S
RECOMMENDATIONS AND FINDINGS

potentially relevant documents were destroyed but <u>not</u> the actual documents themselves. (Exhibit B attached to Declaration of Greg Caouettte) This objectively verifiable evidence also includes the actual mirrored hard drives produced to CCI. The hard drives contain <u>all</u> documents in Hewitt's possession relevant to CCI's claims. Significantly, these hard drives also contain the <u>very documents</u> which CCI represents in its Motion were destroyed by Hewitt.    (Exhibits C and D attached to Declaration of Greg Caouettte) KIL1130" is a folder on Drive 3 where the files "KC24177 Dispo 07-11-04.doc"; "KC24177 Marginal 07-11-04.doc"; "KC24177 Dispo 07-12-04.doc"; and "KC24177 Marginal 07-12-04.doc" may be located. (Exhibit D to Declaration of Greg Couette; Hewitt Declaration, Exhibit A) The "monthly schedule" folder on Drive 3 is where the file "07-04.xls" may be located.    The "jobs" folder, "PP14" folder, "PP15" folder and "SOC" folder are also located on Drive 3. (Exhibit C to Declaration of Greg Caouette; Declaration of Matt Hewitt) These folders and files were never destroyed. (Exhibits B and C attached to Declaration of Greg Caouette; Declaration of Matt Hewitt; see CCI'S Motion, p. 11:9-13, fn 8, 9, 10; 22:18-23:7)

- 12 -

SEPARATE    STATEMENT    OF    OBJECTIONS    TO    MAGISTRATE    MUELLER'S RECOMMENDATIONS AND FINDINGS

WOHL
SAMMIS
PERKINS LLP
)RNEYS AT LAW
4th St. Fourth Floor
mento, CA 95814
t (916) 446-2000
(916) 447-6400

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The specific folders and files which CCI claims were deleted are still contained on drive numbers two and three, Hewitt's laptop and network server. (*Ibid.*) These documents have never been destroyed and CCI knows, or should know, that fact. (*Ibid*) Pursuant to this Court's May 20th Order those folders and files were in fact produced to CCI via Drive 3. (D *Ibid*) As the EE Log shows, the only item destroyed by Hewitt's privacy software was the "*link*" to these documents from the time in which Hewitt accessed the network server from his laptop. (*Ibid*)

*(3) Hewitt knew that "production of the mirror images was subject to the protective order" which would have prevented disclosure of embarrassing information (Mueller Order, p. 3:26, 4:1-3);*

**Hewitt Response**

The protective order notwithstanding, Hewitt was deeply concerned about making available to CCI his private and embarrassing Internet histories and emails.

Hewitt knew that on prior occasions CCI's in-house computer technician Steve Lawson examined the computer hard drives of their former employees for personal and private information.

WOHL
AMMIS
PERKINS LLP
RNEYS AT LAW
4th St. Fourth Floor
mento, CA 95814
t (916) 446-2000
(916) 447-6400

- 13 -
SEPARATE   STATEMENT   OF   OBJECTIONS   TO   MAGISTRATE   MUELLER'S
RECOMMENDATIONS AND FINDINGS

On at least one occasion a former CCI employee had her personal and private information (including pornographic Internet sites that she visited and private emails) circulated between CCI management and even CCI President Bob Schleifer. (RT p. 110; Exhibit B, Hewitt depo, pp. 190:11-25, 191, 192, attached to Declaration of Robin K. Perkins, Exhibit 1.) Hewitt knew about this and did not want Schleifer or others at CCI to know about the Internet sites he visited or the emails he exchanged because in the small community of "data collectors" this information could eventually leak to Hewitt's wife. (*Ibid.*)

*(4) Hewitt "reinstalled the new operating system on Hard Drive 4 ... while understanding that reformatting a hard drive... .would destroy all data previously stored on the drive." (Mueller Order 4:4-7)*

**Hewitt Response**

Hewitt experienced problems with Hard Drive 4 since late May 2004—it had crashed and been reformatted "10-15 times between late May and the last time [Hewitt] tried to fix [Hard Drive 4] in July." (RT p. 121)

To fix the problems with Hard Drive 4 beginning in early June 7, 2004 Hewitt started

- 14 -

WOHL
AMMIS
PERKINS LLP
JRNEYS AT LAW
4ᴬ St. Fourth Floor
mento, CA 95814
e (916) 446-2000
(916) 447-6400

SEPARATE    STATEMENT    OF    OBJECTIONS    TO    MAGISTRATE    MUELLER'S RECOMMENDATIONS AND FINDINGS

| | |
|---|---|
| 1 | communicating by telephone and through |
| 2 | email with customer service technicians at Dell |
| 3 | Computers. (*Id.* at p. 105.) Hewitt thereafter |
| 4 | purchased a new "motherboard", a new DVD- |
| 5 | ROM drive, added memory, and also installed |
| 6 | a new hard drive. These attempts to fix hard |
| 7 | drive four were not successful. (*Id* at p. 106). |
| 8 | However, all of the information on hard drive |
| 9 | four was transferred to hard drive number two |
| 10 | *before* hard drive number four was reformatted |
| 11 | by Hewitt. (*Id.* at p. 111) |
| 12 | |

| | 12. OBJECTION TWELVE: | Evidentiary Support for Objection |
|---|---|---|
| 13 | **12. OBJECTION TWELVE:** | **Evidentiary Support for Objection** |
| 14 | "The court further finds Hewitt's | It is undisputed that Hewitt has not destroyed or |
| 15 | conduct in using Evidence Eliminator | withheld one single document that relates to this |
| 16 | on Hard Drives 1, 2, and 3, and | action. (RT pp. 54, 92, 93, 102, 114, 121) CCI |
| 17 | reinstalling the operating system on | admits they cannot point to a single document |
| 18 | Hard Drive 4, while under a court order | that has been withheld or deleted by Hewitt. (RT |
| 19 | to produce mirror images of these | p. 53) |
| 20 | drives, was willful and in bad faith, and | Moreover, it appears, respectfully, that Magistrate |
| 21 | intended to destroy discoverable | Mueller fails to understand the difference |
| 22 | evidence." (Magistrate Mueller Order | between the deletion of a "link" versus the |
| 23 | p. 4:9-12.) | deletion of a file or document. The "EE Log", |
| 24 | | confirms that only "links" to some potentially |
| 25 | | relevant documents were destroyed but **not** the |
| 26 | | actual documents themselves. (Exhibit B, |
| 27 | | attached to Declaration of Greg Caouettte, |
| 28 | | attached to Declaration of Robin Perkins, Ex. 1) |

WOHL
AMMIS
PERKINS LLP
ORNEYS AT LAW
4th St. Fourth Floor
mento, CA 95814
r (916) 446-2000
(916) 447-6400

- 15 -
SEPARATE     STATEMENT     OF     OBJECTIONS     TO     MAGISTRATE     MUELLER'S
RECOMMENDATIONS AND FINDINGS

| | |
|---|---|
| 1 | This objectively verifiable evidence also includes |
| 2 | the actual mirrored hard drives produced to CCI. |
| 3 | The hard drives contain <u>all</u> documents in Hewitt's |
| 4 | possession relevant to CCI's claims. |
| 5 | Significantly, these hard drives also contain the |
| 6 | <u>very documents</u> which CCI represents in its |
| 7 | Motion were destroyed by Hewitt. (Exhibits C |
| 8 | and D attached to Declaration of Greg Caouettte) |
| 9 | KIL1130" is a folder on Drive 3 where the files |
| 10 | "KC24177 Dispo 07-11-04.doc"; "KC24177 |
| 11 | Marginal 07-11-04.doc"; "KC24177 Dispo 07-12- |
| 12 | 04.doc"; and "KC24177 Marginal 07-12-04.doc" |
| 13 | may be located. (Exhibit D to Declaration of Greg |
| 14 | Couette; Hewitt Declaration, Exhibit A)   The |
| 15 | "monthly schedule" folder on Drive 3 is where |
| 16 | the file "07-04.xls" may be located. The "jobs" |
| 17 | folder, "PP14" folder, "PP15" folder and "SOC" |
| 18 | folder are also located on Drive 3. (Exhibit C to |
| 19 | Declaration of Greg Couette; Declaration of Matt |
| 20 | Hewitt) These folders and files were never |
| 21 | destroyed.   (Exhibits B and C attached to |
| 22 | Declaration of Greg Couette; Declaration of Matt |
| 23 | Hewitt; see CCI'S Motion, p. 11:9-13, fn 8, 9, 10; |
| 24 | 22:18-23:7) |
| 25 | The specific folders and files which CCI claims |
| 26 | were deleted are still contained on drive numbers |
| 27 | two and three, Hewitt's laptop and network |
| 28 | server. (Declaration of Greg Couette; Declaration |

WOHL
ẦMMIS
ᴾERKINS ʟʟᴘ
ᴅRNEYS AT LAW
4ᵗʰ St. Fourth Floor
mento, CA 95814
e (916) 446-2000
(916) 447-6400

- 16 -

SEPARATE   STATEMENT   OF   OBJECTIONS   TO   MAGISTRATE   MUELLER'S
RECOMMENDATIONS AND FINDINGS

| | |
|---|---|
| | of Matt Hewitt.) These documents have <u>never</u> been destroyed and CCI knows, or should know, that fact.    (Declaration of Greg Caouette; Declaration of Matt Hewitt.)  Pursuant to this Court's May 20th Order those folders and files were in fact produced to CCI via Drive 3. (Declaration of Greg Caouette; Declaration of Matt Hewitt.)  As the EE Log shows, the <u>only</u> item destroyed by Hewitt's privacy software was the *"link"* to these documents from the time in which Hewitt accessed the network server from his laptop. (Declaration of Greg Caouette; Declaration of Matt Hewitt) |
| **OBJECTION THIRTEEN** | <u>**Evidentiary Support for Objection**</u> |
| "As plaintiff's expert testified, the data destroyed is "gone forever" and it is impossible to create mirror images of defendants' hard drives as they existed on May 20, 2004." (Magistrate Mueller Order p. 4:14-15.) | Hewitt incorporates by reference Objection Twelve for the undisputed proposition that CCI cannot identify a single document that was deleted or destroyed by Hewitt. )  CCI's expert admits he cannot point to a single document that has been withheld or deleted by Hewitt. (RT p. 53)  Hewitt has consistently denied destroying or deleting a single document that relates to this case. (RT pp. 54, 92, 93, 102, 114, 121) |
| **OBJECTION FOURTEEN** | <u>**Evidentiary Support for Objection**</u> |
| "Even defendant Hewitt has testified he cannot with certainty state which files | Hewitt testified just the opposite during his deposition *and* at the Evidentiary Hearing: |

WOHL
AMMIS
PERKINS LLP
ORNEYS AT LAW
4th St. Fourth Floor
mento, CA 95814
: (916) 446-2000
(916) 447-6400

- 17 -
SEPARATE    STATEMENT    OF    OBJECTIONS    TO    MAGISTRATE    MUELLER'S
RECOMMENDATIONS AND FINDINGS

| | |
|---|---|
| 1  he destroyed." (Magistrate Mueller | Q: But isn't true that you really don't know |
| 2  Order p. 4:16.) | which files were destroyed by Evidence |
| 3 | Eliminator and which ones were not? |
| 4 | **Hewitt Answer:  Sure I do.  I mean, I had to** |
| 5 | **physically delete something for Evidence** |
| 6 | **Eliminator to do anything with it.  So if I** |
| 7 | **didn't physically delete it, Evidence** |
| 8 | **Eliminator wouldn't have done anything with** |
| 9 | **it." (RT 114-115)** |

CCI's counsel attempted to impeach Hewitt with his prior deposition testimony but his testimony during the deposition was clearly consistent with his testimony during the Evidentiary Hearing. (RT 116-117) What CCI's counsel attempted to show was that Hewitt could not specifically recall the name of each and every file (and there were more than 20,000) that were previously deleted, even thousands that were deleted before commencement of this lawsuit.

Hewitt's Internet histories have been automatically overwritten and deleted on a regular basis *prior* to the filing of this lawsuit. (Declaration of Matt Hewitt.)  For example, Hewitt testified that he used a program called "System Soap."  Hewitt recalled running the program every 30, 60 and 90 days. (Hewitt Deposition, p. 422:9-13, Exhibit B *supra*; see also CCI Motion, p. 15:21-25.)  The System Soap

WOHL
:AMMIS
²ERKINS LLP
ɔRNEYS AT LAW
4ᵗʰ St. Fourth Floor
mento, CA 95814
ε (916) 446-2000
(916) 447-6400

- 18 -
SEPARATE STATEMENT OF OBJECTIONS TO MAGISTRATE MUELLER'S
RECOMMENDATIONS AND FINDINGS

| | program is specifically designed to clean hard drives and Internet histories. (Declaration of Greg Caouette; Declaration of Matt Hewitt.) Thus, any Internet history would have been destroyed before this litigation even began and well before the May 20th Order requiring production of mirrors of the computer hard drives. (Declaration of Greg Caouette; Declaration of Matt Hewitt.) |
|---|---|
| **OBJECTION FIFTEEN** | **Evidentiary Support for Objection** |
| "At this point, plaintiff can never recover the documents this court found were discoverable." (Magistrate Mueller Order p. 4:16-17.) | Hewitt incorporates by reference Objection Twelve and Thirteen for the undisputed proposition that CCI cannot identify a single document that was deleted or destroyed by Hewitt. Hewitt has consistently denied destroying or deleting a single document that relates to this case. (RT pp. 54, 92, 93, 102, 114, 121) |
| **OBJECTION SIXTEEN** | **Evidentiary Support for Objection** |
| "Regarding the third Malone factor, prejudice to the opposing party, the prejudice to plaintiff in the prosecution of this action cannot be overcome in light of defendant's flagrant disregard of this court's order" (Mueller Order, 4:18-20). | "What is most important for case-dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the discovery violations threaten to interfere with the rightful decision of the case. While contumaciousness toward the court needs a remedy, **something other than case-dispositive sanctions will often suffice. Dismissal is appropriate where a 'pattern of deception** and discovery abuse made |

WOHL
AMMIS
PERKINS LLP
ORNEYS AT LAW
4th St. Fourth Floor
mento, CA 95814
e (916) 446-2000
(916) 447-6400

SEPARATE   STATEMENT   OF   OBJECTIONS   TO   MAGISTRATE   MUELLER'S RECOMMENDATIONS AND FINDINGS

1   it impossible' for the district court to conduct a

2   trial 'with any reasonable assurance that the truth

3   would be available.'" (<u>Valley Engineers Inc. v.</u>

4   <u>Electric Engineering Co.</u>, 158 F.3d 1051, 1057

5   (9th Cir. 1998), quoting <u>Adriana Int'l Corp. v.</u>

6   <u>Thoren</u>, 913 F.2d 1406, 1412 (9th Cir. 1990)

7   emphasis added.)

8   CCI's claim of prejudice is based purely on

9   conjecture. Hewitt has not in any way impaired

10  CCI's ability to prepare or present its case at trial.

11  CCI's falsely argues that it was prejudiced

12  because Hewitt destroyed documents central to

13  their claim and that the deleted internet histories

14  *could* show "more information" about Hewitt

15  accessing CCI'S website. These contentions are

16  nothing more than unsupported assumptions. CCI

17  has not and cannot establish that they have

18  suffered any prejudice from Hewitt's removal of

19  unrelated, personal and private information

20  (mostly including his Internet histories) from the

21  computer hard drives.

22  Regarding evidence that CCI claims may have

23  been lost, it is important to remember that CCI

24  only prevails in this lawsuit if it can establish

25  that Hewitt unlawfully solicited clients from CCI

26  and unjustly profited from the unlawful conduct.

27  The problem for CCI is none of these businesses

28  it claims were unlawfully taken by Pacific Crest

WOHL
SAMMIS
PERKINS LLP
JRNEYS AT LAW
4th St. Fourth Floor
mento, CA 95814
e (916) 446-2000
(916) 447-6400

- 20 -

SEPARATE   STATEMENT   OF   OBJECTIONS   TO   MAGISTRATE   MUELLER'S
RECOMMENDATIONS AND FINDINGS

| | |
|---|---|
| 1 | go along with CCI's claim. |
| 2 | *1. Kiley Fired CCI* |
| 3 | Kiley & Company ("Kiley") is a former CCI |
| 4 | client that by 1999 (i.e., before Hewitt left to form |
| 5 | Pacific Crest) had given most of its work to a CCI |
| 6 | competitor called The Parker Group. (Exhibit H, |
| 7 | Griffin depo, 11:14-17, 19:17-24, 20, 21, and |
| 8 | Exhibit D, Schleifer depo, 203:1-12, attached to |
| 9 | Declaration of Robin Perkins, Esq., [Exhibit 1]) |
| 10 | After giving CCI several opportunities to keep |
| 11 | their business Kiley ultimately fired CCI after |
| 12 | discovering that CCI falsified data on surveys. |
| 13 | (Exhibit H, Griffin depo, 22:23-24, 23-27, 39:16- |
| 14 | 20; Exhibit D, Schleifer depo, 202:21-22, 203:1- |
| 15 | 12, attached to Declaration of Robin Perkins, |
| 16 | Esq., [Exhibit 1]) |
| 17 | After firing CCI, Kiley needed a call center to |
| 18 | back up another call center known as the The |
| 19 | Parker Group (which is a competitor of Pacific |
| 20 | Crest and CCI). Griffin called Hewitt. (Exhibit |
| 21 | H, Griffin depo, at 30:10-23, attached to |
| 22 | Declaration of Robin Perkins, Esq., [Exhibit 1]) |
| 23 | Griffin decided to give Pacific Crest a small job |
| 24 | to see how they did. (*Id.* at 35-36.) Griffin was |
| 25 | impressed with Pacific Crest's work and decided |
| 26 | to use them as Kiley's primary vendor. (*Id.* at |
| 27 | 36:24, 37:1-20.) It is undisputed that Kiley's |
| 28 | decision to fire CCI had nothing to do with |

- 21 -

WOHL
iAMMIS
ʾERKINS LLP
ɔRNEYS AT LAW
4ᵗʰ St. Fourth Floor
mento, CA 95814
e (916) 446-2000
(916) 447-6400

SEPARATE STATEMENT OF OBJECTIONS TO MAGISTRATE MUELLER'S
RECOMMENDATIONS AND FINDINGS

Hewitt and that misappropriation against Defendants *cannot* be established. (*Id.* at 39:21-24, 40:1-2.)

**2.) *Socratic Technologies Fired CCI***

Although Socratic Technologies' ("Socratic") Vice President Patty McDowell heard "negative things" about CCI's performance, she decided to give CCI business *because of* Hewitt. (Exhibit J, McDowell depo, 14:12-24; 34:1-11, attached to Declaration of Robin Perkins, Esq. [Exhibit 1]) After learning that Hewitt had left CCI and started his own business, and because she believed Hewitt did "quality work", McDowell contacted Hewitt and asked him to "bid" on an upcoming Socratic job. (*Id.* at 32:1-11, 33:5-22.) **McDowell testified that not a single job that went to Pacific Crest would have gone to CCI.** (*Id.* 25:9-25, 26, 27:1-21, 44:18-25, ["no business that Matt Hewitt did, has done for us, would have gone to CCI" *Id.* at 67:11-16]) Socratic's President described CCI's lawsuit against Hewitt as "nonsense" and because of CCI's actions Socratic will not give any more business to CCI. (*Id.* at 42:3-25, 63:15-25, 64, 65:21-25, 66:1-3.)

**3.) *Selzer & Company Fired CCI***

Anne Selzer, President of Selzer & Company ("Selzer"), testified during her deposition that she lost confidence in CCI when in July of 2003

WOHL
;AMMIS
²ERKINS LLP
)RNEYS AT LAW
4ᵗʰ St. Fourth Floor
mento, CA 95814
e (916) 446-2000
(916) 447-6400

- 22 -
SEPARATE STATEMENT OF OBJECTIONS TO MAGISTRATE MUELLER'S RECOMMENDATIONS AND FINDINGS

(about *a year before* Pacific Crest started) Selzer's primary contact person at CCI, Takako Komatsu, resigned. (Exhibit I, Selzer depo, p. 17-18, attached to Declaration of Robin Perkins, Esq. [Exhibit 1])    Selzer testified that she was disappointed with the service she received from CCI after Komatsu left CCI.  (*Id.* at 21, 22.) Selzer complained on several occasions to CCI about their poor performance but it did not improve.  (*Id.* at 36, 37, 40, 42).  Because of the problems she was having, Selzer considered the recommendation by her friend Takako Komatsu to use Pacific Crest.  In November of 2003 Selzer decided to give a few small jobs to Hewitt to see how Pacific Crest performed.  (*Id.* at 52-53) Selzer believed that Hewitt performed "very well" so she gave Pacific Crest additional work. (*Ibid*)    Selzer also continued to give a small amount of work to CCI in 2003 only because CCI was familiar with the particular job.  (*Id.* at 53) However, Selzer was again dissatisfied with CCI's performance on this particular job (she felt "slighted").    She testified that she lost all confidence in CCI President Schleifer, had a "miserable experience" with CCI's overall performance, and for those reasons **Selzer fired CCI.** (*Id.* 53, 55, 56.)

**4.)** *CCI Consented to Hewitt's Solicitation of*

WOHL
AMMIS
PERKINS LLP
JRNEYS AT LAW
4ª St. Fourth Floor
mento, CA 95814
e (916) 446-2000
(916) 447-6400

- 23 -
SEPARATE    STATEMENT    OF    OBJECTIONS    TO    MAGISTRATE    MUELLER'S RECOMMENDATIONS AND FINDINGS

*Anzalone Liszt Research*

CCI President Schleifer encouraged Hewitt to seek business from Anzalone Liszt Research because they were a "very difficult client" for CCI. (Exhibit A, Komatsu depo, p. 28:23-25, 29, 30, 31:1-5, attached to Declaration of Robin Perkins, Esq., [Exhibit 1]) Pacific Crest has done about nine jobs for Anzalone Liszt—all with CCI's consent (*Ibid.*) Thus, even if Hewitt possessed any alleged trade secrets held by CCI, disclosure to Anzalone Listz Research would have been made with the express or implied consent of CCI.

**5.) *CCI Consented to Hewitt's Solicitation of Binder Research***

Like Anzalone Liszt Research, Binder Research was another company that CCI encouraged Hewitt to contact for business. But CCI went one step further; CCI actually allowed CCI executives Prather and Lawson to program several Pacific Crest jobs for Binder. (Exhibit B, Hewitt depo, 273:18-25, 279:3-24; Exhibit E, Lawson depo, 34:4-25, 35:1-13, 36:15-25, 37, 38, 39:1, 40:13-23; Exhibit A, Komatsu depo, 34:9-21-25, 35, 36:1-20, 119:9-12; Exhibit G, Prather depo, 19:10-25, 20:1-17, 21:20-25, 22:1-10, attached to Declaration of Robin Perkins, Esq., [Exhibit 1]) Schleifer even admits discussing one of these

WOHL
;AMMIS
ᵖERKINS ʟʟᴾ
ᴼRNEYS AT LAW
4ᵗʰ St. Fourth Floor
mento, CA 95814
ᴇ (916) 446-2000
(916) 447-6400

- 24 -

SEPARATE    STATEMENT    OF    OBJECTIONS    TO    MAGISTRATE    MUELLER'S
RECOMMENDATIONS AND FINDINGS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Binder Research jobs with Hewitt in August 2003 but concedes never raising any objection or concern to Hewitt at that time. (Exhibit D, Schleifer depo, 244:6-22, 245:1-8, attached to Declaration of Robin Perkins, Esq., [Exhibit 1]) Binder thought Hewitt did "excellent" work and, because Binder uses several call centers (i.e., not just Pacific Crest or CCI) in addition to CCI, Binder decided to give Hewitt a chance to do additional work. (Exhibit K, Binder depo, 11:14-23, 12:10-22, attached to Declaration of Robin Perkins, Esq., [Exhibit 1]) Binder also gave work to Pacific Crest because he "had a need for an additional vendor" and Pacific Crest's pricing was sometimes "lower than everyone else's." (*Id.* at 27:8-18) Binder's primary vendor is not CCI or Pacific Crest but rather Sacramento-based EMH. (*Id.* at 13:3-6) One of the reasons CCI wanted to use Pacific Crest for Binder jobs was to compete against Sacramento-based EMH; CCI knew that Binder preferred working with a local vendor and Pacific Crest's Fairfield location was actually closer than EMH. (*Id.* at 16) Even if CCI could establish that Hewitt destroyed evidence of their alleged trade secrets, use of those trade secrets with Binder Research was with the express or implied consent of CCI.

WOHL
iAMMIS
ᵖERKINS ʟʟᵖ
ᴰRNEYS AT LAW
4ᵗʰ St. Fourth Floor
mento, CA 95814
e (916) 446-2000
(916) 447-6400

- 25 -
SEPARATE   STATEMENT   OF   OBJECTIONS   TO   MAGISTRATE   MUELLER'S
RECOMMENDATIONS AND FINDINGS

| | |
|---|---|
| **OBJECTION SEVENTEEN** | **Evidentiary Support for Objection** |
| "With respect to the remaining causes of action, the court will presume that the evidence that is now 'gone foreover (sic)' demonstrated the merit of plaintiff's other claims." (Magistrate Mueller Order p. 5:1-2.) | Hewitt incorporates by reference Objections Twelve, Thirteen and Fifteen for the undisputed proposition that CCI cannot identify a single document that was deleted or destroyed by Hewitt. |
| | Hewitt has consistently denied destroying or deleting a single document that relates to this case. (RT pp. 54, 92, 93, 102, 114, 121) |
| **OBJECTION EIGHTEEN** | **Evidentiary Support for Objection** |
| "Regarding the fifth Malone factor, availability of less drastic sanctions, no sanction short of default is available to return the parties to the position in which they would have been but for the deliberate destruction by defendant Hewitt of evidence potentially favorable to the plaintiff." (Magistrate Mueller Order p. 5:8-11.) | Hewitt incorporates by reference Objections Twelve, Thirteen, Fifteen and Seventeen for the undisputed proposition that CCI cannot identify a single document that was deleted or destroyed by Hewitt. |
| | There are certainly less drastic and more appropriate sanctions that are available. The case of Kucala Enterprises v. Auto Wax Company, Inc. 2003 U.S. District Lexis 19103, (2003) is on point and is also the only federal decision that involve the claim that a party violated a court order by using Evidence Eliminator. |
| | The Magistrate in Kucala found, and the District Court agreed, that Plaintiff's wholesale destruction of evidence precluded defendant from establishing its "claims for contributory infringement and inducement of infringement and unable to establish its damages..." (Kucala |

WOHL
AMMIS
PERKINS LLP
ORNEYS AT LAW
4th St. Fourth Floor
mento, CA 95814
e (916) 446-2000
(916) 447-6400

SEPARATE STATEMENT OF OBJECTIONS TO MAGISTRATE MUELLER'S RECOMMENDATIONS AND FINDINGS

1    _Enterprises v. Auto Wax Company, Inc._, 2003

2    U.S. District Lexis 19103, *supra* p. 17)    The

3    District Court observed that plaintiff not only

4    *admitted* destroying relevant documents with

5    Evidence Eliminator, plaintiff was also found to

6    have "resisted [discovery efforts] at every turn",

7    _Id._ p. 17)  After reviewing plaintiff's objections,

8    the District Court rejected the Magistrate's

9    recommendation of dismissal believing that "the

10   interests of justice is served by the adjudication"

11   of the claims "on the merits."  (*Id.* p. 20)  In

12   rejecting the Magistrate's recommendation of

13   dismissal the District Court instead fashioned a

14   lesser sanction that allowed "the case to go

15   forward" while warning plaintiff that any further

16   misconduct *could* result in a default judgment.

17   (*Id.* p. 20).  The lesser sanction ordered by the

18   District Court gave defendant the opportunity to

19   present evidence that plaintiff willfully destroyed

20   documents by using Evidence Eliminator, which

21   the jury could consider for both causation and

22   damages.  (*Ibid.*)

23   Kucala is instructive.  Unlike the plaintiff in

24   Kucaia, Hewitt recognizes that he made an error

25   in judgment when using privacy protection

26   software on the hard drives before they were

27   produced.  The plaintiff in Kucala, on the other

28   hand, expressed zero remorse, *admitted* buying

- 27 -

WOHL
AMMIS
PERKINS (U·
JRNEYS AT LAW
4th St. Fourth Floor
mento, CA 95814
·(916) 446 2000
·(916) 447 6400

SEPARATE    STATEMENT    OF    OBJECTIONS    TO    MAGISTRATE    MUELLER'S
RECOMMENDATIONS AND FINDINGS

1  Evidence Eliminator to delete evidence and defeat

2  discovery efforts, and in fact deleted evidence

3  from the computer hard drive—there is *no*

4  evidence that Hewitt intended to or in fact deleted

5  any evidence in this case. Unlike the plaintiff in

6  Kucala Hewitt did not discuss with counsel his

7  intent to use Evidence Eliminator and was

8  therefore not advised against it. Hewitt, unlike

9  the plaintiff in Kucala, never lied during his

10  deposition nor has there been any determination

11  that Hewitt was untruthful. Unlike the plaintiff in

12  Kucala Hewitt did not falsify evidence nor did he

13  purposely delete all evidence relative to damages

14  (claimed by CCI). In fact, just the opposite is

15  true; Hewitt has produced from his computer hard

16  drives *each and every invoice* evidencing

17  payments received from *each and every* client,

18  including the five so-called former CCI clients.

19  Based, in part, in the guidance offered in Kucala

20  Enterprises v. Auto Wax Company, Inc., *supra,*

21  2003 U.S. District Lexis 19103, *supra,* Hewitt

22  respectfully asks this Honorable Court to reach a

23  similar harsh but fair sanction such as a negative

24  inference instruction and/or allowing CCI the

25  opportunity to present evidence of Hewitt's

26  conduct for the purpose of establishing liability

27  and damages. The interests of judgment will be

28  served by imposing a lesser sanction thereby

WOHL
iAMMIS
'ERKINS LLP
)RNEYS AT LAW
4ᵗʰ St. Fourth Floor
mento, CA 95814
e (916) 446-2000
(916) 447-6400

- 28 -
SEPARATE   STATEMENT   OF   OBJECTIONS   TO   MAGISTRATE   MUELLER'S
RECOMMENDATIONS AND FINDINGS

| | |
|---|---|
| | allowing the jury to decide this case on the merits rather than on Hewitt's grievous mistake. On the other hand Hewitt has consistently denied destroying or deleting a single document that relates to this case. (RT pp. 54, 92, 93, 102, 114, 121) |
| **OBJECTION NINETEEN** | **Evidentiary Support for Objection** |
| "Defendant Hewitt's conduct has precluded this action being decided on the merits; the jury can no longer weigh conflicting evidence because Hewitt has ensured whatever evidence on certain of defendants' computers that may have been favorable to plaintiff will never see the light of day." (Magistrate Mueller Order p. 5:11-14.) | Hewitt incorporates by reference Objections Twelve, Thirteen, Fifteen, Seventeen and Eighteen for the undisputed proposition that CCI cannot identify a single document that was deleted or destroyed by Hewitt and certainly less drastic sanctions are available. (RT pp. 54, 92, 93, 102, 114, 121; Kucala Enterprises v. Auto Wax Company, Inc. 2003 U.S. Dist. Lexis 19103, p. 20, *supra*,) |
| **OBJECTION TWENTY** | **Evidentiary Support for Objection** |
| "Monetary sanctions cannot substitute for plaintiff's presentation of its case to the jury." (Magistrate Mueller Order p. 5:14-15.) | Defendants' incorporate by reference argument that less drastic sanctions, including *reasonable* monetary sanctions are available. (Kucala Enterprises v. Auto Wax Company, Inc. 2003 U.S. Dist. Lexis 19103, p. 20, *supra*). Based, in part, in the guidance offered in Kucala Enterprises v. Auto Wax Company, Inc., *supra,* 2003 U.S. District Lexis 19103, *supra,* Hewitt respectfully asks this Honorable Court to reach a similar harsh but fair sanction such as a negative |

- 29 -

SEPARATE    STATEMENT    OF    OBJECTIONS    TO    MAGISTRATE    MUELLER'S
RECOMMENDATIONS AND FINDINGS

WOHL
SAMMIS
PERKINS LLP
JRNEYS AT LAW
44 St. Fourth Floor
mento, CA 95814
t (916) 446-2000
(916) 447-6400

| | inference instruction and/or allowing CCI the |
|---|---|
| | opportunity to present evidence of Hewitt's |
| | conduct for the purpose of establishing liability |
| | and damages. The interests of judgment will be |
| | served by imposing a lesser sanction thereby |
| | allowing the jury to decide this case on the merits |
| | rather than on Hewitt's grievous mistake. |
| | Reasonable monetary sanctions could include |
| | compensation to CCI for the costs it expended by |
| | its expert Mr. Menz. Those monetary sanctions |
| | along with CCI's ability to tell the jury about |
| | Hewitt's use of Evidence Eliminator would be a |
| | reasonable and sufficient punishment for his |
| | conduct. |
| **OBJECTION TWENTY-ONE** | **Evidentiary Support for Objection** |
| "Evidentiary sanctions such as shifting the | "What is most important for case-dispositive |
| burden of proof also are insufficient | sanctions, regarding risk of prejudice and of less |
| because Hewitt arrogated to himself the | drastic sanctions, is whether the discovery |
| right to decide what evidence would be | violations threaten to interfere with the rightful |
| made available for trial." (Magistrate | decision of the case. While contumaciousness |
| Mueller Order p. 5:15-17.) | toward the court needs a remedy, **something** |
| | **other than case-dispositive sanctions will often** |
| | **suffice.    Dismissal is appropriate where a** |
| | **'pattern of deception** and discovery abuse made |
| | it impossible' for the district court to conduct a |
| | trial 'with any reasonable assurance that the truth |
| | would be available.'" (Valley Engineers Inc. v. |

WOHL
iAMMIS
'ERKINS LLP
)RNEYS AT LAW
4ᵗʰ St. Fourth Floor
mento, CA 95814
c (916) 446-2000
(916) 447-6400

SEPARATE    STATEMENT    OF    OBJECTIONS    TO    MAGISTRATE    MUELLER'S
RECOMMENDATIONS AND FINDINGS

| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9 | Electric Engineering Co., 158 F.3d 1051, 1057 (9th Cir. 1998), quoting Adriana Int'l Corp. v. Thoren, 913 F.2d 1406, 1412 (9th Cir. 1990) emphasis added.)<br>Less drastic sanctions, including an evidentiary sanction are available. (Kucala Enterprises v, Auto Wax Company, Inc. 2003 U.S. Dist. Lexis 19103, p. 20, *supra*). |
| 10  **OBJECTION TWENTY-TWO** | **Evidentiary Support for Objection** |
| 11  "To the extent defendant argues he has<br>12  produced a substantial number of<br>13  documents, including some evidence<br>14  favorable to plaintiff, there is no<br>15  assurance that such evidence is as<br>16  persuasive for plaintiff's side as that<br>17  which was destroyed." (Magistrate<br>18  Mueller Order p. 5:21-23.) | It is undisputed that Hewitt has not destroyed or withheld one single document that relates to this action. CCI admits they cannot point to a single document that has been withheld or deleted by Hewitt.    Hewitt    has    consistently    denied destroying or deleting a single document that relates to this case. (RT pp. 54, 92, 93, 102, 114, 121) |
| 19<br>20<br>21<br>22<br>23<br>24 | As the EE Log shows, the only item destroyed by Hewitt's privacy software was the "*link*" to these documents from the time in which Hewitt accessed the network server from his laptop. (Declaration of Greg Couette; Declaration of Matt Hewitt) |
| 25<br>26<br>27<br>28 | ***Incorporation by Record***<br>Defendants also incorporate by record the arguments made in paragraph III(C)3(b) in the Memorandum of Points and Authorities in |

WOHL
SAMMIS
PERKINS LLP
ORNEYS AT LAW
4th St. Fourth Floor
mento, CA 95814
e (916) 446-2000
(916) 447-6400

SEPARATE    STATEMENT    OF    OBJECTIONS    TO    MAGISTRATE    MUELLER'S RECOMMENDATIONS AND FINDINGS

Support of Objections ("**There is No Prejudice to CCI Because Even If Hewitt Possessed Evidence that CCI Assumes is in Existence CCI Still Cannot Prevail in this Case**") as though the arguments were fully set forth herein.

| **OBJECTION TWENTY-THREE** | **Evidentiary Support for Objection** |
|---|---|
| "Plaintiff requests attorneys' fees and expert costs incurred in connection with the motion for sanctions. The court has reviewed in camera the billing records pertinent to the sanctions motion. The court finds the billing records are sufficiently detailed and the amount billed reasonable so as to support plaintiff's request for fees and costs in the amount of $145,811.75." (Magistrate Mueller Order p. 6:10-14.) | When seeking an award of attorney's fees under Rule 37(b) the moving party must first show that requested attorney's fees are reasonable. (*Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381, 1386 (9th Cir. 1988) [award of fees remanded in part because there was "no evidence in the record to indicate that the rates claimed were reasonable or that they were comparable with prevailing rates in the community."]) Although an award of attorney's fees may be based upon the affidavits of counsel, the evidence presented must be "detailed enough to allow the court to consider all the factors necessary to set the fee." (*Williams v. Alioto,* 625 F.2d 845, 849 (9th Cir. 1980)) "The affidavits must provide sufficient information to enable the court to clearly establish for the record that the fees demanded are caused by the noncomplying conduct and that they are reasonable." (*Toth, supra,* 862 F.2d at 1386) A declaration by counsel should include the specific nature of services rendered, the prevailing rate, |

WOHL
AMMIS
PERKINS LLP
ORNEYS AT LAW
4th St. Fourth Floor
mento, CA 95814
e (916) 446-2000
(916) 447-6400

- 32 -
SEPARATE   STATEMENT   OF   OBJECTIONS   TO   MAGISTRATE   MUELLER'S
RECOMMENDATIONS AND FINDINGS

and the hours of attorney time. (*Ibid*)

CCI claims it has incurred over $145,000 in attorney's fees and costs on this current motion for sanctions.    This claim is patently unreasonable and must not be allowed.    When CCI first attempted to justify its request for attorney's fees, Magistrate Mueller originally sustained Hewitt's objections to the claimed fees and costs. However, Magistrate Mueller ordered CCI to submit the actual billing statements within twenty days. CCI failed to comply with this order.    Instead, CCI once again provided an alleged summary of the billing statements.  At that time, CCI also conceded that it previously included erroneous hourly billing rates for "the attorneys and staff working on this matter" and that it had significantly overstated the fees requested. (See Declaration of Michael J. Daponde in Support of Request for Attorneys Fees, ¶3.)

Hewitt once again objected to the billing summary and all evidence offered to support CCI's claim for attorney's fees and costs. (See Defendant's Objections to Declaration of Michael J., Daponde.) In lieu of sustaining the objections, Magistrate Mueller gave CCI a third bite of the apple. Magistrate Mueller permitted CCI to submit un-redacted copies of billing records for *in*

- 33 -
SEPARATE    STATEMENT    OF    OBJECTIONS    TO    MAGISTRATE    MUELLER'S
RECOMMENDATIONS AND FINDINGS

WOHL ;AMMIS ᴾERKINS ʟʟᴘ ᴼRNEYS ᴀᴛ ʟᴀᴡ 4ᵗʰ St. Fourth Floor mento, CA 95814 ᴇ (916) 446-2000 (916) 447-6400

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*camera* review. Based upon the *in camera* review, Magistrate Mueller determined that the "... billing records are sufficiently detailed and the amount billed reasonable ..." and recommended that Hewitt pay $145,811.75 in attorneys fees and costs.

CCI's request for $145,811.75 in attorney's fees and costs, however, is grossly excessive and inflated. When seeking an award of attorney's fees under Rule 37(b) the moving party must first show that requested attorney's fees are reasonable. (Toth v. Trans World Airlines, Inc., 862 F.2d 1381, 1386 (9th Cir. 1988) [award of fees remanded in part because there was "no evidence in the record to indicate that the rates claimed were reasonable or that they were comparable with prevailing rates in the community."]) Although an award of attorney's fees may be based upon the affidavits of counsel, the evidence presented must be "detailed enough to allow the court to consider all the factors necessary to set the fee." (Williams v. Alioto, 625 F.2d 845, 849 (9th Cir. 1980)) "The affidavits must provide sufficient information to enable the court to clearly establish for the record that the fees demanded are caused by the noncomplying conduct and that they are reasonable." (Toth, *supra,* 862 F.2d at 1386) A declaration by counsel

WOHL
 & AMMIS
PERKINS LLP
ORNEYS AT LAW
4th St. Fourth Floor
mento, CA 95814
e (916) 446-2000
(916) 447-6400

- 34 -
SEPARATE    STATEMENT    OF    OBJECTIONS    TO    MAGISTRATE    MUELLER'S
RECOMMENDATIONS AND FINDINGS

should include the specific nature of services rendered, the prevailing rate, and the hours of attorney time. (Ibid.)

"When the sanctions award is based upon attorney's fees and related expenses, an essential part of determining the reasonableness of the award is inquiring into the reasonableness of the claimed fees." (In Re Yagman 796 F.2d 1165, 1184-85 (9th Cir.1986) [district court erred by among other things, failing to consider party's "ability to pay such an immense sum which, in our view, is another factor relevant in determining reasonableness.") The court must make some evaluation of the fee breakdown submitted by counsel. (Id. at p. 1185.) The court should consider "not actual expenses and fees but those the court determines to be reasonable." (Ibid) Implicit in this is the duty to mitigate. In assessing the damage done, the court should consider the extent to which it is self-inflicted due to the failure to mitigate ...." (Ibid)

Although Hewitt has never been afforded the opportunity to challenge the specific fees and costs incurred because billing records have not been produced, it appears clear that both the hourly rates and claimed hours are excessive.[1]

The Court is asked to take Judicial Notice of the April 30, 2004 declaration of Michael Daponde,

WOHL
ÍAMMIS
ᵖERKINS ʟʟᴘ
ᴊRNEYS AʼT LAW
4ᵗʰ St. Fourth Floor
mento, CA 95814
e (916) 446-2000
(916) 447-6400

SEPARATE     STATEMENT     OF     OBJECTIONS     TO     MAGISTRATE     MUELLER'S
RECOMMENDATIONS AND FINDINGS

1  Esq., wherein Mr. Daponde declares under
2  penalty of perjury in support of monetary
3  sanctions that Mr. Webster's "hourly rate on this
4  matter is \$430", that Mr. Daponde's rate is
5  "\$360" an hour, and first-year lawyer Ms.
6  Bonnington's rate on this case is "\$250" per hour.
7  These rates were again included in Mr.
8  Daponde's Declaration in support of CCI's
9  Motion for Sanctions.

10  Only after Magistrate Mueller sustained
11  Defendants' objections did Mr. Daponde indicate
12  in a *supplemental* Declaration that his two prior
13  sworn declarations relative to billing rates were
14  erroneous.

15  However, even at the "corrected" hourly rate, Ben
16  Webster's billing rate for this case is \$365.00 per
17  hour (in another "mistaken" Declaration, this one
18  on April 30, 2004, Mr. Daponde declares that Mr.
19  Webster rate is \$430 per hour on this case). The
20  "corrected" hourly rate for Mike Daponde, who
21  has been practicing for about 6 years, is \$323.00
22  per hour (in another "mistaken" Declaration Mr.
23  Daponde claims to charge \$360 per hour on this
24  case). The rates do not comport with the
25  prevailing rate in Sacramento and are
26  unwarranted.

27  In addition, the total claimed hours is excessive.
28  CCI has charged time for 5 different staff

WOHL
iAMMIS
ᴾERKINS ʟʟᴘ
JRNEYS AT LAW
4ᵗʰ St. Fourth Floor
mento, CA 95814
ᴇ (916) 446-2000
(916) 447-6400

- 36 -
SEPARATE   STATEMENT   OF   OBJECTIONS   TO   MAGISTRATE   MUELLER'S
RECOMMENDATIONS AND FINDINGS

members working on this case. This included 3 different attorneys and 2 paralegals. Yet, no consideration appears to have been made as to whether there was any duplication or redundant time charged. All of the work performed by Ben Webster, Carrie Bonnington and the paralegals appears to be duplicative. Another blatant example of duplication appears to be the charge of $4,760 for work performed by paralegal Octavio Filippini. CCI attempts to charge for his work at $170 per hour for analyzing the hard drives. CCI also charges for this same work by their expert witness Menz. Unbelievably, CCI charges more per hour for their paralegal than for the work performed by the computer expert who testified at the evidentiary hearing.

CCI also cannot establish that they used reasonable efforts to mitigate their claim for fees. For example, rather than simply ask Hewiti's counsel if they had any of the files or folders that CCI claims were destroyed, or asking for assistance or clarification in obtaining these files, CCI's counsel instead rushed to spend in excess of $160,000 in fees and costs to file this Motion. (See FRCP, Rule 37(a)(4)(A).) Had CCI made even the slightest effort to resolve these issues, the Motion may never have been filed. At a minimum, CCI would have reduced the amount

- 37 -

WOHL
AMMIS
PERKINS LLP
ORNEYS AT LAW
4th St. Fourth Floor
ranto, CA 958,4
r (916) 446-2000
(916) 447-6400

SEPARATE    STATEMENT    OF    OBJECTIONS    TO    MAGISTRATE    MUELLER'S
RECOMMENDATIONS AND FINDINGS

1    of attorney's fees and costs expended.

2    CCI should not be rewarded for their obvious

3    attempt to take advantage of Hewitt's legitimate,

4    albeit misguided, effort to preserve his privacy

5    rights. If CCI were truly interested in a trial on

6    the merits their counsel would have simply called

7    Hewitt's counsel to inquire about the files CCI

8    claims were destroyed by Hewitt. At that time,

9    Hewitt would have informed CCI that they

10    already had the files claimed to have been

11    destroyed in their possession. If Hewitt no longer

12    had possession of any files or documents, he

13    would have made every effort to insure that CCI

14    obtained copies of theses documents and files.

15    Moreover, CCI had every opportunity during his

16    depositions to ask Hewitt specific questions with

17    regard to the EE Log but failed to do so. In fact,

18    CCI never even showed Hewitt the EE Log at his

19    deposition even though they had it. (Exhibit B,

20    Hewitt Deposition, 424:15-431:21, Exhibit 1)

21    CCI dodged the important questions at issue in

22    their Motion and instead merely asked Hewitt

23    whether files called "bids" and "monthly

24    schedule" contained personal and private

25    information. (Hewitt Deposition, 426:18:427:23,

26    Exhibit B *supra*) Had CCI simply asked Hewitt

27    what the references were in the EE Log to "DBR

28    Bids," "KIL1130" and files named "KC24177

WOHL
;AMMIS
'ERKINS LLP
JRNEYS AT LAW
4ᵗʰ St. Fourth Floor
mento, CA 95814
t (916) 446-2000
(916) 447-6400

- 38 -
SEPARATE    STATEMENT    OF    OBJECTIONS    TO    MAGISTRATE    MUELLER'S
RECOMMENDATIONS AND FINDINGS

Dispo 07-11-04.doc," "KC24177 Dispo 07-12-04.doc," "KC24177 Marginal 07-11-04.doc" (i.e., the files that CCI repeatedly claims in their Motion that Hewitt destroyed) Hewitt would have explained that these were merely references to *"links"* from his laptop to the Sun server. Hewitt would have explained that these files were never deleted, are still located on the Sun server. More importantly, Hewitt would have explained that these files were already produced to CCI.

If CCI believed that Hewitt's answers in deposition did not respond to their specific concerns that files were deleted or destroyed they could have and should have discussed the matter with counsel before filing this motion. Instead, before filing this motion CCI's counsel undertook no effort to corroborate the opinion from their so-called expert by simply asking Hewitt or Hewitt's counsel. Had they done so, CCI may have been spared the $145,000 invoice charged by their counsel in preparing the Motion. (See Request for Judicial Notice, Declarations of Robin K. Perkins, Esq., and Christopher Wohl, Esq..)

| **OBJECTION TWENTY-FOUR** | **Evidentiary Support for Objection** |
|---|---|
| "It is hereby recommended that defendants' answer be stricken and default be entered against defendants | Defendants incorporate their arguments and evidence in the preceding 23 objections as though set forth herein. |

WOHL
AMMIS
PERKINS LLP
JRNEYS AT LAW
4th St. Fourth Floor
menio, CA 95814
r (916) 446-2000
(916) 447-6400

- 39 -
SEPARATE   STATEMENT   OF   OBJECTIONS   TO   MAGISTRATE   MUELLER'S
RECOMMENDATIONS AND FINDINGS

1  on all causes of action except for the
2  seventh cause of action for breach of
3  employment agreement and the eighth
4  cause of action for fraud." (Mueller
5  Order, 6:15-17)

6  ### III.   RENEWED   OBJECTIONS   TO   DECLARATION   OF   MICHAEL
7  ### DAPONDE, ESQ. IN SUPPORT OF MOTION FOR SANCTIONS

| | |
|---|---|
| Attorneys fees and costs incurred as a result of Defendants several attempts to avoid producing mirror images and subsequent destruction of evidence has exceeded $100,000 to date. (¶14, 4:25-27.) | Objection based on lack of foundation, and inadmissible hearsay. (FRE Rules 602, 603, and 801; See also Daponde Declaration; ¶¶ 16-20 whereby Daponde admits that his calculations are purely based upon "estimates.") Objection is also made because the proffered opinion is based on speculation, conjecture and other improper matter. (FRE 703; See also Daponde Declaration; ¶¶ 16-20.) |
| His (Ben Webster, Esq.) hourly rate on this matter is $430 per hour and **I estimate** that he spent more that 20 hours on the tasks described above. (total $8,600) (¶16, 5:16-17.) | Objection based on lack of foundation, and inadmissible hearsay. (FRE Rules 602, 603, and 801) Objection is also made because the proffered opinion is based on speculation, conjecture and other improper matter. (FRE 703) |
| My hourly rate on this matter is $360 per hour and **I estimate** that I spent more that 125 hours on the tasks described above. (total $45,000) (¶17, 5:19-20.) | Objection based on lack of foundation, and inadmissible hearsay. (FRE Rules 602, 603, and 801) Objection is also made because the proffered opinion is based on speculation, conjecture and other improper matter. (FRE 703) |
| Her (Carrie Bonnington, Esq.) hourly | Objection based on lack of foundation, and |

WOHL
AMMIS
PERKINS LLP
ORNEYS AT LAW
4th St. Fourth Floor
mento, CA 95814
e (916) 446-2000
(916) 447-6400

- 40 -
SEPARATE   STATEMENT   OF   OBJECTIONS   TO   MAGISTRATE   MUELLER'S
RECOMMENDATIONS AND FINDINGS

| | |
|---|---|
| 1<br>2<br>3<br>4<br>5 | rate on this matter is $225 per hour and **I estimate** that she spent more that 115 hours on the matters described above. (total $25,875) (¶18, 5:22-23.) | inadmissible hearsay. (FRE Rules 602, 603, and 801) Objection is also made because the proffered opinion is based on speculation, conjecture and other improper matter. (FRE 703) |
| 6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14 | **I estimate** that other attorneys and/or paralegals spent more than 45 hours on the matters described above; **the average hourly rate of these individuals is approximately per hour**. (total $5,250) In addition, **Mr. Menz' rate** is $150 per hour and **he spent more than 35 hours** analyzing the hard drives. (¶19, 5:24-27.) | Objection based on lack of foundation, and inadmissible hearsay. (FRE Rules 602, 603, and 801) Objection is also made because the proffered opinion is based on speculation, conjecture and other improper matter. (FRE 703) |
| 15<br>16<br>17<br>18<br>19<br>20<br>21 | **I estimate** that CCI will incur additional fees associated with reviewing Defendant's opposition, preparing reply papers, preparing for and attending the hearing and other related tasks totaling approximately $15,000. | Objection based on lack of foundation, and inadmissible hearsay. (FRE Rules 602, 603, and 801) Objection is also made because the proffered opinion is based on speculation, conjecture and other improper matter. (FRE 703) |

22  DATED: April Ꝝ, 2005.

**WOHL SAMMIS & PERKINS LLP**

By_____
Christopher Wohl
Attorneys for Defendants

WOHL
SAMMIS
PERKINS LLP
ORNEYS AT LAW
4th St. Fourth Floor
mento, CA 95814
e (916) 446-2000
(916) 447-6400

- 41 -
SEPARATE    STATEMENT    OF    OBJECTIONS    TO    MAGISTRATE    MUELLER'S
RECOMMENDATIONS AND FINDINGS

1

## PROOF OF SERVICE

2

   I am employed in the County of Sacramento, State of California. I am over the age of 18
3
years and not a party to the above-captioned matter. My business address is 1006 4th Street,
Fourth Floor, Sacramento, California 94814-3314.

4

5     On this date, I served the foregoing document described as:

6 **SEPARATE STATEMENT OF OBJECTIONS TO MAGISTRATE JUDGE MUELLER'S**
**FINDINGS AND RECOMMENDATIONS**

7

8 on the parties below by placing a true copy thereof in a sealed envelope and served same on the
parties/counsel, addressed as follows:

9

10               Michael J. DaPonde, Esq.
               Pillsbury Winthrop Shaw Pittman LLP
11               400 Capitol Mall, Suite 1700
               Sacramento, CA 95814-4419

12
     The following is the procedure in which service of this document was effected:
13

14     ____ (BY REGULAR MAIL) by placing such envelope(s) with postage thereon fully prepaid in
the designated area for outgoing mail in accordance with this office's practice, whereby the mail
15 is deposited in a U.S. mailbox in the City of Sacramento, California after the close of the day's
business.
16

17     ____ (BY FACSIMILE TRANSMITTAL) by placing a true copy thereof into a facsimile
machine addressed to the person, address and facsimile number shown above.
18

19     XX (BY PERSONAL SERVICE) by delivering by hand and leaving a true copy with the person
and/or secretary at the address shown above.
20

21     I hereby declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct and this document was executed at Sacramento, California on April
22 25, 2005.

23

24                                      _____

25

26

27

28